```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
KENNETH MOXEY,

                    Appellant,
                                                MEMORANDUM & ORDER
          -against-                             14-CV-6972(JS)

ROBERT L. PRYOR, MAAAS ENTERPRISES, LP,
V-JAMA HOLDINGS, LLC, TUTHILL FINANCE,
And MPJM CRUSH HOLDINGS,

                    Appellees.
----------------------------------------X
APPEARANCES
For Appellant:     Kenneth Moxey, pro se
                   923 Custer Street
                   Valley Stream, NY 11580

For Appellees:     J. Logan Rappaport, Esq.
                   Pryor & Mandelup, LLP
                   675 Old Country Road
                   Westbury, NY 11590

                   Bruce L. Weiner, Esq.
                   Rosenberg Musso & Weiner, LLP
                   26 Court St., Ste. 2211
                   Brooklyn, NY 11242
```

SEYBERT, District Judge:

    Pro Se appellant Kevin Moxey ("Moxey" or "Appellant") is the debtor in a Chapter 7 bankruptcy proceeding captioned In re Kenneth G. Moxey, No. 8-12-74340, and a related adversary proceeding captioned Moxey v. Pryor, et al., No. 8-13-8108. Those actions are before Judge Alan Trust in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). Moxey appeals from certain of the Bankruptcy Court's

1

orders in those proceedings. For the reasons discussed herein, the orders appealed from are AFFIRMED in part and VACATED in part.

BACKGROUND

Though made complex by Moxey's lack of discretion in filing papers and heaving unfounded allegations on all involved, Moxey's bankruptcy proceeding is, at its core, an effort to secure his alleged interest in real property located at 245 South First Street, Brooklyn, New York 11211 (the "Property").

Moxey purchased the Property sometime prior to May 25, 2007. (Sanctions Mot., Docket Entry 1-1, at 26.[1]) On that date and in exchange for a loan of $480,000.00, Moxey signed a note for the loan and gave Tuthill Finance LP ("Tuthill") a mortgage on the Property. (Sanctions Mot. at 26.) In 2009, after Moxey defaulted under the terms of the note, Tuthill commenced a foreclosure action in the New York State Supreme Court, Kings County, under index number 932/2009 (the "Foreclosure Action"). (Sanctions Mot. at 26-27.) Moxey never answered Tuthill's summons and complaint. (Sanctions Mot. at 27.) Thereafter, Tuthill transferred its unanswered Foreclosure Action to MPJM Crush Holdings, LLC ("Crush"). (Sanctions Mot. at 27.)

After it received Tuthill's interest in the Foreclosure Action, Crush obtained a default judgment against Moxey.

---

[1] Page Numbers are those generated by the Electronic Case Filing System.

(Sanctions Mot. at 27.) After Moxey's unsuccessful challenge to the default judgment, the State Court granted Crush a final judgment of foreclosure and sale, determining that Moxey owed Crush $757,811.78, plus interest. (Sanctions Mot. at 27.) Moxey filed for bankruptcy to prevent the foreclosure sale. (Sanctions Mot. at 27.)

Moxey filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code on July 12, 2012. (Sanctions Mot. at 28.) Moxey's petition valued the Property at $600,000.00 and indicated that it was encumbered by two mortgages totaling $757,000.00. (Sanctions Mot. at 28.)

Robert L. Pryor (the "Trustee") was appointed as the Chapter 7 trustee of the bankruptcy estate. (Sanctions Mot. at 28.)

In October 2012 the Trustee and Crush negotiated a settlement that provided for the disposition of the Property Crush would make a stalking-horse offer of $600,000.00, plus a $25,000.00 payment to the appointed Receiver of Rents for a quitclaim deed to the property. (Sanctions Mot. § 13 at 9.) Crush's offer was a credit-offer, with a $44,000.00 cash carve-out for Trustee and related fees. (Sanctions Mot. § 14 at 9-10.) Crush's offer was subject to higher and better offers. (Sanctions Mot. § 28 at 13.) The parties moved the Bankruptcy Court for approval of the agreement on November 16, 2012, and Moxey did not object.

3

(Sanctions Mot. §§ 15-16 at 10.)  The Bankruptcy Court approved the agreement on December 11, 2012.  (Sanctions Mot. § 16 at 10.)  Moxey did not appeal.  (Sanctions Mot. § 17 at 10.)

On January 9, 2013, Crush executed an Assignment of Bid assigned its stalking-horse bid to Maaas Enterprises, LP ("Maaas") and V-Jama Holdings, LLC ("Jama").  (Sanctions Mot. at 29.)  The sale was later closed, and the Trustee executed a deed conveying the Property to Maaas and Jama.  (Sanctions Mot. at 29.)

In May of 2013, after the transfer of the Property, Moxey began a flurry of legal activity.  (Sactions Mot. at 29.)  Moxey sued the Trustee, Crush, Tuthill, Maaas, Jama, and others in New York State Supreme Court, Kings County (the "State Court Action"), and in July 2013 commenced adversary proceeding 138108 against the Trustee (the "Adversary Proceeding").  (Sanctions Mot. at 29.)  The State Court Action was removed to this Court, then transferred to the Bankruptcy Court and consolidated with the Adversary Proceeding.  (Sanctions Mot. at 30-31.)  Moxey was ordered to file an amended complaint.  (Sanctions Mot. at 31.)

Moxey has since flooded the Bankruptcy Court with various motions and other papers.  After examining the numerous pleadings, motions, and other papers that Moxey had filed, Appellees expressed concern that "[Moxey's] papers have been and are being drafted by a legal practitioner."  (Appellees' Br., Docket Entry 4, at 11.)  Consequently, the Trustee requested the

4

deposition of Moxey for the limited purpose of determining (1) whether Appellant has received any aid in connection with the preparation of his pleadings, motions, and other papers; (2) what aid, if any, he has received; and (3) the identity of the individual(s) providing him with such assistance or ghostwriting such papers. (Appellees' Br. at 11.)

The Bankruptcy Court granted the Trustee's request to depose Moxey at a hearing held in the Adversary Proceeding on February 25, 2014. The Bankruptcy Court memorialized this oral order in a March 10 written order prohibiting plaintiff from filing further pleadings with this court for ninety (90) days. (See March 10, 2014 Order, Docket Entry 1-1, at 33 n. 12 and at 34.) Following the two orders, on April 14, 2014, the Trustee, by his attorney, served Moxey with a Notice of Deposition stating that his deposition date was set for April 29, 2014. (Notice of Dep, Docket Entry 1-7.) Moxey failed to appear.

As a result of Moxey's refusal to appear at the court-ordered and properly noticed deposition, Appellees moved for sanctions (the "Sanctions Motion"). (See Sanctions Mot.) Judge Trust gave Moxey a second chance; rather than sanction Moxey, he ordered that he appear for a deposition, warning that the Bankruptcy Court may "treat any unexcused failure of [Moxey] to comply with this Order as a contempt of court . . . ." (Order Directing Dep., Docket Entry 1-11, at 3.) On June 4, 2014, the

5

Trustee, by counsel, once again served Moxey with an Amended Notice of Deposition notifying Moxey that his deposition was scheduled for June 24, 2014. (Am. Dep. Notice, Docket Entry 1-12.) In response to the second notice of deposition, Moxey moved for a protective order. (See Protective Order Mot., Docket Entry 1-4.) Additionally, Moxey filed an objection to Appellees' Sanctions Motion. (See Objection to Sanctions Mot., Docket Entry 1-5.)

On July 1, 2014, the Bankruptcy Court held a hearing on the Motion for a Protective Order and the Sanctions Motion. (See July 16 Order, Docket Entry 1-19, at 2.) On July 16, 2014, the Bankruptcy Court issued an order denying Moxey's Motion for a Protective Order and granting the Trustee's Sanctions Motion ("Sanctions Order"). (See July 16 Order at 1-4.) The Bankruptcy Court found that sanctions were appropriate because Moxey failed to comply with several notices of deposition, its February 25, 2014 ruling, and its June 3, 2014 Order, all of which required Moxey to appear for a deposition. (See July 16 Order at 2.) Judge Trust ordered Moxey to pay reasonable attorneys' fees associated with the preparation of a portion of the Sanctions Motion, the Reply Affirmation in Further Support of the Sanctions Motion, and the Trustee's Objection to the Protective Order Motion. (See July 16 Order at 2.)

6

Moxey now challenges (1) the Bankruptcy Court's granting of the Trustee's Sanctions Motion and (2) the Bankruptcy Court's denial of Moxey's Motion for a Protective Order.

DISCUSSION

The Court will first discuss the applicable standard of review, before considering each of Moxey's challenges in turn.

I. Standard of Review

A district court acts as an appellate court in reviewing judgments rendered by the Bankruptcy Courts. FED. R. BANKR. P. 8013; In re Cody, Inc., 338 F.3d 89, 94 (2d Cir. 2003). The Bankruptcy Court's findings of fact are reviewed for clear error. In re Kalikow, 602 F.3d 82, 91 (2d Cir. 2010). "A factual finding is clearly erroneous only if . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Ortega v. Duncan, 333 F.3d 102, 106-07 (2d Cir. 2003) (internal quotation marks and citation omitted). Conclusions of law are reviewed de novo. Kalikow, 602 F.3d at 91.

II. Sanctions Order

Moxey first challenges the Bankruptcy Court's granting of the Sanctions Motion. A bankruptcy court derives its power to sanction through several sources, including the court's inherent authority, the Federal Rules of Bankruptcy Procedure, and 11 U.S.C.

7

§ 105.[2] See Law v. Siegel, 134 S. Ct. 1188, 1198, 188 L. Ed. 2d 146 (2014). In light of the various sources of authority pursuant to which a bankruptcy court may sanction a party--and particularly in light of the fact that each source utilizes a different legal analysis--a bankruptcy court must specify the authority pursuant to which sanctions are issued. The Second Circuit has explained:

> The Bankruptcy Court's discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court. Because an award might be based on "any of a number of rules or statutory provisions," each "governed by differing standards," we have found it "imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power."

Kalikow, 602 F.3d at 96 (quoting Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997)); see also MA Salazar, Inc. v. Inc. Vill. of Atl. Beach, 499 B.R. 268, 275 (E.D.N.Y. 2013); In re Obasi, No. 10-CV-10494, 2011 WL 6336153, at *8 (Bankr. S.D.N.Y. Dec. 19,

---

[2] "'[I]nherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes.'" In re Plumeri, 434 B.R. 315, 328 (S.D.N.Y. 2010) (quoting Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009)). Rule 37, applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7037, allows a bankruptcy court to sanction a party for failing to comply with the bankruptcy court's deposition order. See FED. R. CIV. P. 37(d)(1)(A)(i). Section 105 of the Bankruptcy Code provides the authority for a bankruptcy court "to issue 'any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].'" Kalikow, 602 F.3d at 96 (alteration in original) (quoting 11 U.S.C. § 105(a)).

8

2011); Plumeri, 434 B.R. at 327. "Thus, although the [bankruptcy] court's award of sanctions is reviewed under an abuse-of-discretion standard, . . . such an award either without reference to any statute, rule, decision, or other authority, or with reference only to a source that is inapplicable will rarely be upheld." Sakon, 119 F.3d at 113 (citations omitted).

The purpose of the requirement that the bankruptcy court specify the authority pursuant to which it issues sanctions is to give notice and an opportunity to be heard to the party being sanctioned. Plumeri, 434 B.R. at 327 ("Whatever the type of sanctions to be imposed, '[b]efore imposing sanctions, the court must afford the person it proposes to sanction due process, i.e., notice and opportunity to be heard.'" (quoting Mickle v. Morin, 297 F.3d 114, 126 (2d Cir. 2002) (alteration in original))). That party "'must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.'" Sakon, 119 F.3d at 114 (quoting Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 97 (2d Cir. 1997)). "This requirement is fulfilled by the identification of the relevant Federal Rule . . . or statute that warrants imposition of a sanction." Viola v. U.S., 481 F. App'x 30, 31 (2d Cir. 2012) (citing Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)).

The Bankruptcy Court's July 16, 2014 Order failed to set forth the specific legal authority on which the sanctions were

9

based.  The order suggests that Appellees moved under both the Bankruptcy Court's inherent powers and 11 U.S.C. § 105(a) (July 16 Order at 1,) but it is silent as to which provision the Bankruptcy Court applied.  Absent any further detail, the Sanctions Order cannot be affirmed.  See Kalikow, 602 F.3d at 97.

Arguably, the reference in the Order to the Bankruptcy Court's inherent powers and 11 U.S.C § 105(a) was sufficient to put Moxey on notice that the Bankruptcy Court was considering sanctions under both provisions.  See Sakon, 119 F.3d at 114 (explaining that a litigant "'must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges'" (quoting Ted Lapidus, S.A., 112 F.3d at 97)).  However, in a subsequent order denying Moxey's motion to vacate the Sanctions Order, the Bankruptcy Court explained that Moxey was in fact sanctioned pursuant to Federal Rule 37(d)(3), incorporated by Bankruptcy Rule 7037.  (See Order Denying Debtor's Mots., Docket Entry 1-27, at 8.)  Thus, even if Moxey had an opportunity to dispute the imposition of sanctions under the Bankruptcy Court's inherent authority and 11 U.S.C. § 105(a), he did not have an opportunity to dispute the sanctions under Federal Rule 37.[3]  Accordingly, the Bankruptcy Court's July 16 Sanctions Order is VACATED.

---

[3] The fact that Moxey later learned the source of the authority under which he was sanctioned is of no consequence.  By then,

Although the Court vacates the Bankruptcy Court's imposition of sanctions against Moxey, its conclusion today should not be read to condone Moxey's behavior. Indeed, based upon the Court's independent review of the Bankruptcy docket, Moxey's behavior has progressed far beyond that required for sanctions under any of the various authorities given to the Bankruptcy Court. Thus, the Court's Memorandum and Order today is in no way intended to embolden Moxey or otherwise license him to continue his pattern of frivolous, vexatious filings.

III. <u>Protective Order</u>

Next, Moxey alleges that the Bankruptcy Court erred when it refused to grant his Motion for a Protective Order. The Court disagrees. Moxey argues that his Motion for a Protective Order should have been granted because "[t]he information which the Trustee sought has no relevance to the case . . . ." (Appellant's Br. on Appeal, Docket Entry 3, at 10.) The Bankruptcy Court concluded that if there is a ghostwriter, the identity of the ghostwriter is relevant because Moxey's countless pleadings and motions "include scandalous and spurious allegations, for which no good faith basis appears to exist, and which include repetitive and overlapping claims for relief which are simply not available

---

Moxey had already been deprived of a meaningful opportunity to be heard.

at law or in equity." (Order Directing Dep. at 1.) The Bankruptcy Court reasoned that if Moxey's claims prove to be frivolous, the Trustee would have the opportunity to move for sanctions against the ghostwriting lawyer. See FED. R. BANKR. P. 9011(c). The Court finds the Bankruptcy Court's reasoning persuasive.

Moreover, to obtain a protective order, a party must have a good faith basis for the protective order. FED. R. CIV. P. 26(c)(1)[4] ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."). The Bankruptcy Court concluded that because Moxey failed to allege a good faith basis in his Motion for a Protective Order, he was not entitled to one pursuant to Federal Rule of Civil Procedure 26(c)(1). (See July 16 Order at 2 ("[T]he Protective Order Motion [was] denied in its entirety as [Moxey] has failed to establish any good faith basis for the relief sought therein . . . .").) This Court finds no error in the Bankruptcy Court's ruling.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's denial of Moxey's Motion for a Protective Order is AFFIRMED and granting of the Trustee's Sanctions Motion is VACATED. The Clerk of the

---

[4] Rule 26(c) is applicable to bankruptcy proceedings. See In re Varela, 530 B.R. 573, 587-88 (Bankr. E.D.N.Y. 2015).

Court is directed to mail a copy of this Memorandum and Order to the pro se Appellant and to mark this appeal CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August  25 , 2015
       Central Islip, New York